244 So.2d 619 (1971)
Elois CAIN
v.
The TRAVELERS INSURANCE COMPANY.
No. 4057.
Court of Appeal of Louisiana, Fourth Circuit.
February 8, 1971.
Rehearing Denied March 10, 1971.
Writ Refused May 3, 1971.
*620 Badeaux & Discon, J. Michael Cumberland, New Orleans, for plaintiff-appellee.
Jones, Walker, Waechter, Poitevant, Carrere & Denegre, Ignatz G. Kiefer, New Orleans, for defendant-appellant.
Before REGAN, GULOTTA, and TAYLOR, JJ.
GULOTTA, Judge.
Plaintiff, Elois Cain, instituted this suit against The Travelers Insurance Company endeavoring to recover on an accident and health policy for weekly indemnity in the amount of $50 per week. Plaintiff is the insured of a policy issued by defendant, under the terms of which defendant insured plaintiff against continuous total disability resulting from accidental injury. In his petition plaintiff asserted that he was totally disabled from engaging in any work activity as a result of a back injury incurred by him at work on May 27, 1958. It was further asserted by plaintiff that defendant had paid weekly indemnity benefits in the amount of $50 per week from May 27, 1958, to June 9, 1965.
Defendant answered and denied liability acknowledging that it had made weekly payments to plaintiff in the amount and at such times as alleged by plaintiff, approximating $18,350. Defendant further alleged that payments were terminated on the basis of medical information received from Dr. H. R. Soboloff, Orthopedic Surgeon, on February 27, 1965, that plaintiff was well and could return to work and from Dr. Richard H. Corales, Jr., that plaintiff could resume his work since there was nothing organically or neurologically wrong with him.
Plaintiff subsequently filed a supplemental and amended petition which set forth a new cause of action but which was later abandoned by plaintiff.
The trial court granted judgment in favor of plaintiff for future payments in the amount of $50 per week, ordering all past due payments to be made while denying plaintiff's claim for penalties and attorney's fees. Defendant's motion for a new trial was denied; however, the court did issue detailed written reasons for judgment in response to plaintiff's motion for reasons for judgment.
From this judgment in favor of plaintiff, defendant has appealed.
Plaintiff's claim for recovery is based upon his contention that plaintiff is suffering from traumatic neurosis resulting from an injury incurred while in the course of his employment and that while there are no objective findings that the injury to the back continues to persist, still the traumatic neurosis of the plaintiff has resulted in a mental or nervous disorder making him unable to work, though he desires to do so.
The defendant contends that plaintiff is not suffering from traumatic neurosis as contended by plaintiff because the evidence in the record and the finding of the trial judge was that the "plaintiff" was untruthful and unworthy of belief. His contention is that a prerequisite to one suffering from traumatic neurosis is that the person be *621 truthful, sincere, and motivated by a true desire to recover and to resume work.
The factual question presented here is whether plaintiff is afflicted with traumatic neurosis as a direct result of his alleged back injury received May 27, 1958. In matters involving claims based upon mental or nervous disorders, the court must consider the same with utmost caution. As the court in Ladner v. Higgins, 71 So.2d 242, 245 (La.App.Orleans 1954), rehearing denied, April 12, 1954, said:
"We are fully cognizant of the caution which we must exercise in a case of this nature, in view of the nebulous characteristics of a neurosis * * *."
In Miller v. United States Fidelity and Guaranty Company, 99 So.2d 511, 518 (La. App. 2nd Cir. 1957), rehearing denied, January 21, 1958, the court in determining whether to give compensation for traumatic neurosis reiterated the need for caution:
"We are fully cognizant of and have striven to take into proper consideration the dangers of abuse that are implicit in the acceptance of mental and nervous disorders and affections as constituting disability within the intent and purpose of our compensation statute. This danger has been voiced numerous times by the courts of this state, and it is accepted as an established principle, that the evidence in cases of this nature should be scrutinized with extreme care and that every precaution should be taken to protect employers and insurers against unjustified claims which lie in the somewhat nebulous realm of mental affections. On the other hand, the contrary danger of denying recovery to a deserving claimant is equally apparent." (Emphasis added.)
The record reveals that Dr. Richard Corales, a neurosurgeon, saw plaintiff from August 8, 1958June 17, 1959. He recommended that a myelogram be performed on Mr. Cain in order to obtain objective data to treat the patient's back complaint. Mr. Cain refused the myelogram which could have resulted in definitive objective findings. Dr. Corales again saw Mr. Cain on June 8, 1965, and conducted a complete neurological examination with negative results.
Dr. Dean, a general practitioner, saw plaintiff before December, 1962. His finding that plaintiff had back injury was based on subjective signs. He saw plaintiff periodically and could not detect any objective signs of injury. On July 26, 1965, a report of Dr. Dean indicated that from an objective standpoint there was nothing wrong with Mr. Cain's back but based on subjective complaints, plaintiff was totally disabled.
Dr. Alvin Cohen, a psychiatrist, first saw Mr. Cain in January, 1962, and then on two occasions in 1967. Dr. Cohen concluded that Mr. Cain was suffering from traumatic neurosis due to his 1958 injury. Dr. Cohen determined Mr. Cain's problem on the basis of what Mr. Cain told him, what the doctor asked Mr. Cain and his wife, and what they in turn related to the doctor.
Dr. Cohen stated that Mr. Cain had never indicated to him during his 1962 examination of Mr. Cain that he had suffered epileptic seizures prior to the 1958 injury and even as far back as November 1952, at the time of an earlier injury. However, Mr. Cain's hospital record was long, showing numerous entries into Charity Hospital with complaint of seizures; and yet he failed to mention this to Dr. Cohen. Dr. Cohen told the court that if a patient lied continuously, it might or might not hamper the diagnosis depending on the material omitted.
Dr. Richard Paddison, a neurologist, saw Mr. Cain at least three times between 1965 and 1967. Dr. Paddison felt that plaintiff was genuinely suffering from traumatic neurosis despite the fact that on each occasion a neurological exam was conducted with negative results. The doctor's opinion *622 seems to be based mainly on plaintiff's history as given to him by plaintiff.
Dr. Robert Ourso, a psychiatrist, gave objective factors to the court which he felt could be determinative as to whether one has traumatic neurosis. In contrast to plaintiff in the case at bar, such an individual is generally cooperative with his psychiatrist or physician and consciously tries to get well. Dr. Ourso examined Mr. Cain's records. Dr. Ourso felt that he was in a better position now to diagnose plaintiff than Dr. Cohen had been on earlier occasions because of subsequent information available now that had not been available to Dr. Cohen. Dr. Ourso said that to diagnose traumatic neurosis with accuracy it is an important criterion to be able to believe the majority of what the patient relates. Based on knowledge of Mr. Cain's behavior and the fabrications and inconsistencies therein, Dr. Ourso was of the opinion that Mr. Cain was not a victim of traumatic neurosis.
Dr. Herman D. Colomb, a psychiatrist, also emphasized the motivation to get well in a victim of traumatic neurosis. The individual would not lie in the treating process, according to Dr. Colomb, but would tell the truth. He indicated that a sufferer of traumatic neurosis would be totally preoccupied with trying to get well and, unlike plaintiff, would want a myelogram. Dr. Colomb emphasized the need for an accurate history in making a professional diagnois.
In light of the conflicting medical testimony in the case at bar, the recitals of Mr. Cain have thus been a major consideration of the court. Numerous inconsistencies in his testimony are apparent from the record. Mr. Cain had alleged that prior to the accident in 1958 his health was good, when in fact in 1952 he had sustained a head injury resulting in 30 to 40 epileptic seizures. Mr. Cain professed having never been involved in prior litigation, when in reality his injury in 1952 resulted in two years of extensive litigation in Civil District Court. Mr. Cain failed to tell Dr. Paddison of his prior injury but instead misrepresented that he had always been in good health up to the time of the subject accident in 1958.
Mr. Cain said he had never been in trouble with the law whereas several charges had been brought against him. Mr. Cain was dishonest in his deposition about never having suffered from any previous illness or disease prior to the 1958 alleged injury. He further indicated that he had never seen another doctor before the accident subject of the case at bar when in fact he had conferred with more than ten doctors from 1952-1954.
Other behavior of Mr. Cain which this court finds noteworthy is that he submitted to Continental Casualty Company purported drug receipts for reimbursements from Schwegmann's Drugstore which were later identified as stolen receipts from Schwegmann's Service Station which had been forged. A handwriting expert, Mr. Gilbert Fortier, identified the writing on these receipts as that of plaintiff. Plaintiff denied having misappropriated these receipts.
Other inconsistencies in the testimony of Mr. Cain are obvious and apparent from the record.
In his reasons for judgment the trial judge stated:
"The Court does not feel that the testimony of Mrs. Cain nor of her husband who is the plaintiff in this matter, Mr. Cain, are entitled to any credibility whatsoever. The Court feels that the plaintiff in this matter, Mr. Cain, is a very uneducated man and many of the inconsistencies are due to his lack of education. However, the Court also feels that the testimony cannot be relied upon as a truthful, sincere and honest attempt by the plaintiff." (Emphasis added.)
"The Court believes * * * that the plaintiff is completely unworthy of belief." (Emphasis added.)
*623 It is accepted jurisprudence that except in instances of manifest error, a trial court's factual determinations and evaluations of the credibility of witnesses should not be disturbed upon review. Bonner v. Leesville, 118 So.2d 154, 155 (La.App. 1st Cir. 1960).
While we concur with the trial judge in his factual determination and evaluation of the lack of credibility of the plaintiff, we find error in the findings of the trial court that plaintiff was suffering from traumatic neurosis.
This court in the case of Parker v. General Earthwork Service, 103 So.2d 573, 577 (La.App. Orleans 1958), rehearing denied, June 27, 1958, set forth criteria for recovery in a true case of traumatic neurosis.
"At the outset we are impressed with the straight forward manner of plaintiff's recitals as well as the sincerity, honesty and truthfulness implicit therein. * * * Of course, we reiterate, that courts are loathe to allow recovery for post-traumatic neurosis on the testimony of the litigant alone, be he most honest and trustworthy." (Emphasis added.)
In contrast to the Parker case, supra, the plaintiff's mannerism in the case at bar was deceitful, insincere and not truthful. Thus this court is understandably "loathe to allow recovery" based essentially on the recitals of plaintiff.
Applying the criterion of Parker, supra, to the case at bar, we find that the opinions of Drs. Cohen and Paddison were based upon misrepresentation of plaintiff, Mr. Cain. In determining whether or not a party is suffering from traumatic neurosis, the basis for decision is solely dependent on facts the patient relates himself. He alone can know if he suffers from a seeming physical ailment and by necessity he alone feels the manifestation of the pain. A doctor is dependent on the patient to communicate the nature of his pain to him. Whether the causation of this pain is physical or mental is irrelevant to the reality of the suffering in the patient's mind. What this court questions, however, is the reality of the suffering of plaintiff. This court cannot accept medical conclusions based on subjective testimony from a subject who has consistently lied and is "completely unworthy of belief". An error in premise naturally leads to an erroneous conclusion. Therefore, when Mr. Cain's recitals about his physical symptoms and suffering were shown to be replete with inconsistencies and lies, it is only logical to assume that the medical opinions based essentially on these inconsistencies and wrong facts are not without error. We cannot with one hand conclude a man's testimony is "beyond belief" and with the other hand award benefits based exclusively on this testimony. Any award to plaintiff would emanate from his relation of facts about his injury. Since Mr. Cain's testimony is "not entitled to any credibility whatsoever", his relation of facts cannot be grounds for relief in the eyes of this court.
We are, therefore, of the opinion that plaintiff has failed to prove by a preponderance of evidence that he suffers from traumatic neurosis and that the trial court was in error in awarding plaintiff weekly indemnity payments.
For the reasons assigned, the judgment appealed from is reversed and plaintiff's suit is dismissed at his costs.
Reversed.