FRUGÉ, Judge.
Mrs. Lovenia C. Royer instituted suit against E. W. Cantrelle, d/b/a Hub City Laundry and Cleaners, et al., for benefits under the Workmen’s Compensation Act for permanent and total disability. For reasons assigned, plaintiff’s demands were rejected, and she appealed. The question before this court is whether the plaintiff incurred a post-traumatic neurosis as a result of the accidental injuries sustained by her while in the course and scope of her employment.
It is undisputed that Mrs. Royer’s right hand was burned when it was caught in an automatic shirt pressing apparatus. She complains that her hand becomes numb, hurts, and swells when she tries to perform even menial work. She returned to work on two occasions following the accident, but was unable to perform her duties because of pain. Subsequent to the accident, Mrs. Royer saw a number of physicians, a psychiatrist, and a physical therapist.
Dr. Montgomery, a general practitioner, first saw Mrs. Royer on March 29, 1966, the date of the accident, when he attended the wound. He testified that she seemed to be on her way to recovery by April 19, 1966.
*603 Dr. Stewart, dermatologist, saw Mrs. Royer on April 22, 1966, at which time he noted the burned area on her hand, swelling of the hand and some limitation in the range of motion because of the swelling. Dr. Stewart treated the wound until June 11th, at which time he stated the hand seemed completely healed from a dermatological standpoint.
On June 1st, 1966, Mrs. Royer was seen by Dr. Dunning, an orthopedist, who noted a scar on her right hand, swelling, and some limitation of motion of the fingers. On December 1, 1966, Dr. Dunning advised her to return to work. The plaintiff followed his recommendation, but later informed the doctor that she could not work due to swelling in her hand. Plaintiff again saw Dr. Dunning in January of 1967, when she stated, as previously, that she could not use her hand because it pained her if she manipulated it. Dr. Dunning asserted that he did not believe that Mrs. Royer had any permanent physical disability.
Dr. Webre, orthopedist, saw the plaintiff one time on June 26, 1968. Dr. Webre concluded from an objective evaluation, that there was no evidence of impairment of the hands which would prevent her from returning to her previous employment, although he did feel that she probably had some sensitivity about the injury, and some weakness in the hand.
On February 28, 1969, Mrs. Royer was seen by Dr. Richard, surgeon, at which time she, then as previously, dejectedly complained of pain in her right hand. Dr. Richard probabilized that Mrs. Royer had a restriction in blood circulation in her arm, and an operation was performed. Dr. Richard testified that after the operation, she was objectively improved but that she persisted in her complaints of pain, and psychologically she was not better. Dr. Richard testified that from a physical and surgical standpoint, he could find no explanation for her continued symptoms.
Mr. Laperouse testified that he had given physical therapy exercises to Mrs. Roy-er beginning in June of 1966. He stated that she was very cooperative, but that she showed no real improvement in strength.
On July 20, 1970, the plaintiff was examined by Dr. William Cloyd, Jr., psychiatrist. Dr. Cloyd’s diagnosis was that of a neurosis following trauma. He categorically concluded that Mrs. Royer was not a malingerer. Dr. Cloyd very emphatically stated that her complaints of pain were real to her, that this neurosis would affect her ability to use her hand, and that since his examination was some four years after the injury the condition is permanent.
In recapitulating the medical evidence, it is manifest that Doctors Montgomery, Stewart, Dunning, Webre, and Richard, all concluded from an objective standpoint, that there was no disability. However, Dr. Cloyd, a psychiatrist, concluded that plaintiff was definitely not malingering and was suffering from traumatic neurosis.
Dr. Cloyd’s conclusion was substantiated by the testimony of lay witnesses. Mrs. George Guilbeaux, the plaintiff’s neighbor, testified that the plaintiff was unable to sew because she could not cut the material or sew by hand, and that she, Mrs. Guil-beaux, assists the plaintiff by doing her ironjfog and house cleaning. Mrs. Roy Guilbeaux, Mary Louise Menard, and Lois Cormier’s testimony was essentially identical; the plaintiff’s ability to work was restricted to very limited house work.
Louisiana allows awards of compensation for disability resulting from neurosis caused by an injury in the course of employment. Tate v. Gullett Gin Company and Liberty Mutual Ins. Co., 86 So.2d 698 (La.App. 1st Cir., 1956). There is no necessity that there also be a physical disability. Harrell v. Delta Drilling Company, 251 So.2d 97 (La.App. 3rd Cir., 1971), writs refused 259 La. 896, 253 So.2d 221 (1971). In Miller v. United States Fidelity and Guaranty Co., 99 So.2d 511 (La.App. *604 2nd Cir., 1957), after being examined by orthopedic surgeons who could find no objective reasons for the plaintiff’s disability, the plaintiff was examined by a psychiatrist who concluded that the man’s complaints of pain were due to a conversion hysteria (traumatic neurosis). In a landmark decision, the court agreed with the psychiatric findings and awarded total and permanent disability.
It is well settled that compensation claims predicated upon traumatic illnesses must be carefully scrutinized in order to protect the employer against unwarranted claims. Smith v. Wiley Wood Construction Co., 247 So.2d 904 (La.App. 4th Cir., 1971). However, it is likewise well settled that the danger of denying recovery to a deserving claimant must be guarded against with equal enthusiasm. Jackson v. International Paper Company, 163 So.2d 362 (La.App. 3rd Cir., 1964).
In 1967 this court decided the case of Manshack v. Employers Mutual Liability Ins. Co., 199 So.2d 579 (La.App. 3rd Cir., 1967), a case very similar to the one at bar in the following respects:
(1) The defendant did not have the plaintiff examined by a psychiatrist.
(2) Nowhere in the record was there any testimony, psychiatric or otherwise, which conflicted with the diagnosis advanced by the psychiatrist.
(3) No physician expressed an opinion that the plaintiff exaggerated his symptoms in order to influence their diagnosis.
(4) Lay testimony without exception demonstrated that the plaintiff was a capable, conscientious employee, [1] who before the accident was seldom heard to complain.
(5) The psychiatric examinations concluded that plaintiff was disabled from performing former duties and that this disability was caused by the accident sustained while in the employ of the defendant.
(6) The psychiatric conclusions were supported by uncontradicted lay testimony.
(7) Plaintiff returned to work, but was unable to function at the former job because of pain.
(8) The plaintiff’s complaints of pain were investigated on separate occasions by a number of physicians, none of whom could provide, from an objective standpoint, an adequate explanation.
In concluding the plaintiff’s claim for compensation was legitimate, we placed heavy emphasis on the fact that the lay testimony corroborated the plaintiff’s own testimony and that of the psychiatrists in every respect.
The lay testimony in the case at bar stands uncontradicted to the effect that following the accident Mrs. Royer was unable to do the same work she had done prior to the accident. This testimony, coupled with that of Dr. Cloyd’s clearly preponderate to plaintiff’s benefit.
In the case of Muse v. Sentry Insurance Company, 269 So.2d 609 (La.App. 3rd Cir., 1972), we found that the plaintiff should be awarded permanent disability benefits on the basis of traumatic neurosis. The plaintiff had been examined by Dr. Tex-ada, a psychiatrist, who testified that there had never been any indication of traumatic illness, but the court noted that Dr. Texada had never conducted any psychiatric examinations; all of his tests were of a neurological nature designed to discover objective symptoms. His testimony was contradicted by Dr. Phillips, a psychiatrist, who found that Mr. Muse did suffer from traumatic neurosis. The defendant maintained that there was some conflict in expert medical testimony between Doctors Texada and Phillips. We differed with defendant’s contention and stated the following:
*605 “Dr. Texada never performed a psychiatric examination on the plaintiff. All of the examinations conducted by Dr. Texada were of a neurological variety designed solely to detect objective findings * * * having conducted no psychiatric examination, we find that Dr. iTexada was not in a position to have accurately evaluated plaintiffs condition. * * * Therefore, we find Dr. Phillips’ testimony uncontradicted.” (Emphasis ours).
In contrast to Muse and Manshack, the case of Skinner v. Wheeling Pipe Line, Inc., 159 So.2d 317 (La.App. 2nd Cir., 1963), held that one psychiatrist’s testimony was not sufficient to establish traumatic neurosis. The court acknowledged that the jurisprudence is replete with pronouncements that opinions of experts concerning matters coming with their particular specialties are entitled to great weight. However, the reason why the court chose not to follow the recommendations of the psychiatrist is clear and follows:
“The doctor’s testimony, however, as to whether plaintiff actually suffered traumatic neurosis was guarded, vague, indefinite, and unconvincing, and, in some instances, confused or contradictory." (Emphasis ours).
In the case at bar, Dr. Cloyd was very specific in regard to his conclusions. He stated that there was no hint of malingering. When asked whether he thought the plaintiff was being truthful he answered : “I feel that she was truthful.” He unequivocally testified that the plaintiff did not evade his questions or do anything to canvass sympathy from anyone. Of the plaintiff’s attitude, Dr. Cloyd stated it was very cooperative with no trace of dramatization or distractability. In short, its palpable from the record that Dr. Cloyd’s testimony can in no way be characterized as “guarded, vague, indefinite, and unconvincing, . . . confused or contradictory” as the court found in the Skinner case. On the contrary, his testimony is eminently believable and a lucid explanation of the nature of Mrs. Royer’s illness.
Dr. Cloyd stated conclusively that the plaintiff was suffering from traumatic neurosis. This conclusion was reached after a detailed interview with the plaintiff. At no time has the integrity or competency of Dr. Cloyd been questioned. The psychiatric findings were not negated by any evidence, but were corroborated by the testimony of lay witnesses.
The defendant attempts to show that Dr. Cloyd was delinquent in relying upon the reports furnished him by the other physicians who had previously treated Mrs. Royer. This procedure is proper and accepted in medical practice. Cain v. Travelers Insurance Company, 244 So.2d 619 (La.App. 4th Cir., 1971); and Williams, infra.
In Boutte v. Mudd Separators, Inc., 236 So.2d 906 (La.App. 3rd Cir., 1970), after finding that the plaintiff was totally and permanently disabled due to diplopia, we noted in passing that considering the facts and circumstances in the particular case, the trial judge had not committed reversible error when he found that the psychiatric evidence was not sufficient to establish traumatic neurosis.
In the Muse case, we said the following:
“We have previously held that the un-contradicted testimony of one psychiatrist based upon a single psychiatric interview is sufficient. Guidry v. Michigan Mutual Liability Company, 130 So. '2d 513 (La.App. 3rd Cir., 1961). See also Webber v. Wofford-Brindley Lumber Company, 113 So.2d 23 (La.App. 1st Cir., 1959).”
In the case of Williams v. Bituminous Casualty Corporation, 131 So.2d 844 (La. App.2nd Cir., 1961), rehearing denied July 7, 1961, defendant claimed that plaintiff failed to prove his case by a preponderance of the evidence due to the fact that only one psychiatrist had testified as to the condition of the plaintiff and that four other *606 orthopedic surgeons had contradicted the psychiatrist’s findings. The court rejected this contention saying that even though only one psychiatrist testified, his opinion was entitled to greater weight than the testimony of those experts in whose fields the subject matter does not fall. The court in the Miller case said the following in regard to the weight given the testimony of experts:
“These medical terms are generally synonymous and fall within that specialty of medical science which deals with mental and nervous, rather than physical, afflictions and disabilities. For this reason, we are not disposed to give any weighty consideration to the testimony of the orthopedic specialists.”
The trial court erred in this case in placing the testimony of the experts who found no disability from a physical standpoint, namely Doctors Montgomery, Stewart, Webre, Dunning, and Richard, on the same level as the testimony of Dr. Cloyd, who found disability on a mental or emotional basis. More weight should have been accorded the testimony of the psychiatrist.
In determining whether or not a party is suffering from traumatic neurosis, the basis for decision is solely dependent upon facts the patient relates himself. He alone can know if he does suffer from a seeming physical ailment, and by necessity he alone feels the manifestations of the pain. Whether the causation of this pain is physical or whether it is mental is irrelevant to the reality of the sufferings of the patient’s mind.
The rationale of the jurisprudence permitting recovery for mental affliction requires a plaintiff be honest, sincere, and truthful. Smith v. Wiley Wood Construction Co., supra. Awards for mental conditions are not made when the record discloses that the plaintiff is dishonest, untruthful, or unworthy of belief. Vezinat v. Marix, 217 So.2d 416 (La.App. 1st Cir., 1968). We are impressed with the straightforward manner of Mrs. Royer’s recitals, as well as the sincerity, honesty, and truthfulness implicit therein.
It is clear to us that this record fully supports the conclusion that plaintiff has surmounted the wall of “suspicion” and shouldered the burden of proof required in cases involving traumatic neurosis.
For the reasons assigned, the judgment of the trial court is reversed, and that accordingly there be judgment in favor of the plaintiff, Mrs. Lovenia C. Royer, and against defendants, E. W. Cantrelle and his insurer, United States Fire Insurance Company, in solido, for compensation at the rate of $23.50 per week, beginning on the 29th day of March, 1966,' and continuing for the duration of disability not to exceed 400 weeks on the basis of permanent disability, with interest at the rate of five per cent per annum on each past due installment from due date until paid, less a credit for amounts previously paid by defendants, and ordering that all accrued amounts with interest be paid in lump sums; that plaintiff have judgment for all past medical expenses up to the statutory sum of $2,500.00 subject to appropriate credits for any payments previously made; that plaintiff’s right to recover future medical expenses be reserved unto him[1]; that plaintiff’s claim for penalties and attorneys’ fees be rejected; and that all costs of this appeal are assessed to defendants.
Reversed and rendered.
MILLER, J., dissents and assigns written reasons.

. Gisevius v. Jackson Brewing Company, 152 So.2d 231 (La.App. 4th Cir., 1963), writ refused, 244 La. 896, 154 So.2d 767 (1963).