SERVICE PHARMACY AND UNITED STATES
FIDELTY AND GUARANTY COMPANY *v.* LEORA COX

5-5860                                              478 S.W. 2d 749

Opinion delivered April 10, 1972

*Barrett, Wheatley, Smith & Deacon,* for appellants.

*Gannoway, Darrow & Hanshaw,* for appellee.

J. FRED JONES, Justice. This is a workmen's compensation case in which Service Pharmacy and its compensation insurance carrier appeal from a judgment of the Craighead County Circuit Court affirming an award for total disability made by the Workmen's Compensation Commission to Leora Cox because of an aggravation of pre-existing varicosities in her legs while employed as as waitress by the appellant, Service Pharmacy, in Jonesboro, Arkansas. The appellants contend that there is no substantial evidence in the record to sustain the award of the Commission, so that is the only question before us

on this appeal. *Mayner* v. *Flyer Garment Co.,* 249 Ark. 384, 459 S. W. 2d 413 (1970).

The record reveals that in 1963 Mrs. Cox underwent surgery for the relief of varicosities in her right leg and was advised by the doctor that she needed similar surgery on the left leg. Mrs. Cox testified that after staying off her feet for approximately six weeks following the surgery in 1963, she got along fine and encountered no further difficulty with her legs until 1968. She testified that about September 1, 1966, she went to work for the appellant-employer as a waitress, and that her duties consisted of waiting tables and helping with the preparation and serving of meals, sandwiches and drinks at the appellant's drugstore. Mrs. Cox testified that in March, 1968, her legs began swelling and became painful and that her family physician, Dr. Poole, referred her to Dr. Bascom Raney who gave her some "fluid tablets" for the swelling in her legs. She said that by taking the tablets she was able to continue her work at the drugstore until in September, 1969, when the swelling became more pronounced and the pain so severe, she was forced to return to Dr. Poole for treatment. She said that Dr. Poole advised her to stay off of her feet, which she did for a period of two weeks during which time her condition improved. She testified that she returned to work on October 13, 1969, and worked until October 24 when she was forced to quit under Dr. Poole's advice and seek surgical intervention for the condition she then had. The evidence is to the effect that Mrs. Cox worked at the drugstore six days a week alternating a nine and one-half hour day with a six hour day and that the cafe portion where Mrs. Cox worked, had a concrete floor covered with linoleum tile. The evidence is to the effect that the cafe business in the drugstore gradually increased with the passage of time and that the necessity for Mrs. Cox to be constantly on her feet in the performance of her duties increased along with the cafe business.

In support of the appellants' argument that there is no substantial evidence that Mrs. Cox suffered an accidental injury growing out of or occurring within the course of her employment, they cite Larson on Work-

eyes of little needles, it would seem manifest that our Act did not undertake to limit compensation to cases where the injury was begun and completed within narrow limits of time, but that it used the expression 'injury by accident' in its common-sense everyday conception as referring to an injury produced without the design or expectation of the workman.'''

In *Batesville White Lime* we further said:

"We conclude that, even though the evidence did not show the exact instant at which the disability of appellee could be said to have occurred by reason of breathing the dust, nevertheless, as shown by the proof, the inhalation of this dust did aggravate appellee's heart ailment to the point of totally disabling him, and therefore the finding of the referee that appellee suffered an accidental injury in the course of his employment was correct."

See also *W. Shanhouse & Sons, Inc.* v. *Sims*, 224 Ark. 86, 272 S. W. 2d 68, where an award for disability caused by empyema was affirmed under medical evidence to the effect that the empyema attended by pleural adhesions was not *caused* by the claimant's work, but that it was *aggravated* by her work in lifting and pulling, thereby irritating the pleural adhesions causing them to weep and develop a fluid which created a basis for the empyema.

The appellants do not question that compensation is payable under the Arkansas law for the aggravation of a pre-existing condition, *Hamilton* v. *Kelly Construction Co.*, 228 Ark. 612, 309 S. W. 2d 323, but the appellants argue that Mrs. Cox failed to prove by any substantial evidence that her pre-existing condition was aggravated to the point of disability by accidental injury arising out of and in the course of her employment. We now examine the evidence on this point.

Dr. Grover Duckett Poole testified that he first saw Mrs. Cox, in connection with the vascular problems in her legs, on September 25, 1969, and that he diagnosed her

men's Compensation Law, and also 99 C.J.S. on Workmen's Compensation, as well as court decisions defining "accidental injury" as requiring the elements of "unexpectedness of cause or result and a definite time the injury occurred."

Ever since our own 1956 opinion in *Bryant Stave & Heading Co.* v. *White,* 227 Ark. 147, 296 S. W. 2d 436, we have been committed to the proposition that,

". . .an injury is accidental where either the cause or the result is unexpected or accidental, although the work being done is usual or ordinary."

In *Harding Glass Co.* v. *Albertson,* 208 Ark. 866, 187 S. W. 2d 961, we quoted from 18 Schneider on Workmen's Compensation Text, Vol. 4, § 1328, p. 543, in part, as follows:

"'It may be stated generally that if the conditions of the employment, whether due to over-exertion, excessive heat, excessive inhalation of dust and fumes, shock, excitement, nervous strain or trauma, tend to increase an employee's blood pressure sufficiently to cause a cerebral hemorrhage, such result constitutes a compensable accident within the intent of most compensation acts, though the employee may have been suffering from a pre-existing diseased condition which predisposed him to such result, or where such result would have occurred in time due to the natural progress of such pre-existing condition. . . .'"

In *Batesville White Lime Co.* v. *Bell,* 212 Ark. 23, 205 S. W. 2d 31, the claim involved the aggravation of a heart condition brought about by the inhalation of dust over a considerable period of time. Compensation was awarded and in affirming the award, we quoted with approval from the North Carolina case of *McNeely* v. *Carolina Asbestos Co.,* 206 N. C. 568, 174 S. E. 509, as follows:

"'Unless we attempt to whittle down or enlarge words or undertake to put big threads through the

condition as "bilateral varicose veins - thrombophlebitis of left leg." He testified that the thrombophlebitis consisted of blood clots in the deep veins of the leg and that he treated Mrs. Cox by hospitalization in bed with elevation of the left leg. The overall substance of Dr. Poole's testimony was to the effect that Mrs. Cox had diseased blood veins in her legs; that standing will slow the blood flow through diseased veins and cause blood clots to more likely occur. Dr. Poole testified that following Mrs. Cox's release from the hospital on October 16, 1969, she had had considerable bed rest and light work around the house and her condition was greatly improved. He then testified as follows:

> "[T]hen on the 23rd when I saw her she had had one period of a week of working again and was then showing swelling of her feet which would indicate circulation was definitely impaired and that is when I told her I didn't think she could continue working without going into another blood clot or some other serious disturbance."

Dr. Poole was then asked and answered questions as follows:

> "Q. Now knowing Mrs. Cox and knowing that she worked as a waitress at Service Pharmacy and, of course, aware that the long hours that she worked, would you say that the long hours she stood as a waitress and other duties that she had out there aggravated her pre-existing condition of varicose veins?
>
> A. Yes.
> * * *
>
> Q. Doctor, you saying however though it is caused by prolonged standing or prolonged walking—anything that would — any occupation that Mr. Landis said that would require prolonged standing or slowing of the blood flow?
>
> A. Would aggravate this condition, yes — I believe we have been over that before."

Dr. Poole referred Mrs. Cox to Dr. William Floyd Hayden, a general surgeon in Little Rock who performed additional surgery. Dr. Hayden testified that he first saw Mrs. Cox on April 7, 1970, at which time she had marked varicosities of both lower extremities, most marked on the left and that she also had secondary bilateral pedal edema. He testified that Mrs. Cox was not suffering from thrombophlebitis at that time and that he stripped the offending vein from the left lower extremity. He said that she was admitted to the hospital for that purpose on May 7 and discharged on May 13. Dr. Hayden then was asked and answered the following questions:

"Q. Doctor Hayden, knowing Mrs. Cox's present condition and assuming that for approximately three years prior to 1969, she worked as a waitress at a pharmacy on an average of approximately eight hours a day and her work required her to be on her feet for prolonged periods of time on a concrete floor. Would you have an opinion as to whether or not this work would tend to aggravate a pre-existing condition of varicose veins?

A. Yes, it would have a tendency to aggravate an existing condition. Occupational influence is one of the major three predisposing factors toward formation or aggravation of varicosities.

Q. All right, sir. Let me ask you this question next. In your opinion, did this work aggravate Mrs. Cox's condition of varicose veins?

A. Yes.

Q. All right, sir. In your opinion, is Mrs. Cox able to work now?

A. Not at a full-time standing-up on her feet all the time type job. She may - surgery didn't cure Mrs. Cox's legs or didn't make them new legs. In the future why she will have to take care of her legs and she will have to wear support hose for an indefinite period of time and learn to elevate them when she

sits down and in general just take care of her legs. She should, if she could find employment that didn't require her, you know, to stand up, you know, several hours a day, why I don't think she would be able to stand up several hours a day month after month without winding up, breaking down her skin or having some more trouble from her legs, probably developing some stasis ulcers, but if she could find employment that didn't require all this prolonged standing I don't know why she wouldn't be able to do it."

Two of Mrs. Cox's fellow-employees were called as witnesses by the appellant-employer. Mrs. Julia Hollingworth testified that she was 74 years of age and had been employed as a waitress at the Service Pharmacy since 1965. Mrs. Bernice Lincoln testified that she is fountain manager and cook at the Service Pharmacy and had been so employed for 14 years, and was Mrs. Cox's immediate supervisor. Both of these ladies testified that they worked with Mrs. Cox doing the same type of work she was doing. They both testified that the work in the cafe required long periods of standing on their feet, and they both testified that their own feet and legs swollen and painful from prolonged standing on the concrete floor where they worked.

We are of the opinion that there was some substantial evidence to sustain the Commission's finding, so we conclude that the judgment of the circuit court must be affirmed.

Judgment affirmed.