Otha BOYD *v.* GENERAL INDUSTRIES and AETNA
LIFE & CASUALTY

CA 87-10 733 S.W.2d 750

Court of Appeals of Arkansas
Division II
Opinion delivered July 29, 1987
[Rehearing denied September 9, 1987.]

104

106

*James M. Ammel*, for appellant.

*Butler, Hicky & Routon, Ltd.*, for appellees.

JOHN E. JENNINGS, Judge. This is an appeal from a decision of the Workers' Compensation Commission denying benefits to the appellant, Otha Boyd. The sole issue on appeal is whether the Commission's decision is supported by substantial evidence. We hold that it is not so supported and reverse and remand this case for the Commission to determine the extent of disability.

Otha Boyd is a 47-year-old woman with a high school education. She has an I.Q. of approximately 70 and functions academically on a fifth grade level. She began working for General Industries as an assembly line worker in 1966 and worked there continuously for 13 years. In February, 1980, Boyd suffered an admittedly compensable back injury. Although it is undisputed that she has physically recovered from that relatively minor injury, her contention before the Commission was that she is now disabled by pain which is a symptom of a psychoneurosis and that her disability is causally related to the 1980 back injury. The Commission found that she was not disabled, and that if she were disabled, there was no causal relationship between the back injury and the disability.

In considering a claim the Commission is required to follow a liberal approach and draw all reasonable inferences favorable to the claimant. *Williams* v. *National Youth Corps.*, 269 Ark. 649, 600 S.W.2d 27 (Ark. App. 1980). In making a factual determination, the Commission should give the claimant the benefit of the doubt. *Brower Manufacturing Co.* v. *Willis*, 252 Ark. 755, 480 S.W.2d 950 (1972). But we do not make a *de novo* application of these rules on appeal. *Herman Wilson Lumber Co.*

v. *Hughes*, 245 Ark. 168, 431 S.W.2d 487 (1968).

On review, we must view the evidence in the light most favorable to the findings of the Commission and give the testimony its strongest probative force in favor of the action of the Commission. *McCollum* v. *Rogers*, 238 Ark. 499, 382 S.W.2d 892 (1964). Our standard of review on appeal is whether the decision of the Commission is supported by substantial evidence. *City of Fayetteville* v. *Guess*, 10 Ark. App. 313, 663 S.W.2d 946 (1984). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Phillips* v. *State*, 271 Ark. 96, 607 S.W.2d 664 (1980). We do not reverse a decision of the Commission unless we are convinced that fair minded persons with the same facts before them could not have arrived at the conclusion reached. *Silvicraft, Inc.* v. *Lambert*, 10 Ark. App. 28, 661 S.W.2d 403 (1983). These rules insulate the Commission from judicial review and properly so, as it is a specialist in this area and we are not. But a total insulation would obviously render our function in these cases meaningless.

The Commission correctly recognized that Boyd's problems are now essentially psychological. In 1981, both Dr. Kaplan, a neurosurgeon, and Dr. Seibel noted that she had a functional or emotional overlay in relation to the back pain. In 1983, Dr. McMurtry noted that there was an obvious psychogenic component to her pain experiences and recommended that she be given a Minnesota Multiphasic Personality Inventory (MMPI). This test was given by Dr. Stevens, a clinical psychologist, and showed "a classical conversion pattern for people with chronic pain." Stevens explained, "Such people utilize denial. . . and typically complain of weakness, fatigue, along with ongoing pain. They unconsciously tend to convert any stress or pressure into additional or amplified complaints." His diagnosis at that time was "psychological factors affecting physical condition" with "some hysterical conversion dynamics present." Dr. Bevilacqua, a psychiatrist, diagnosed Boyd as having "psychophysiologic musculoskeletal disorder with conversion, anxiety and depressive symptoms." Dr. Kaczenski, also a psychiatrist, diagnosed Boyd as suffering from "conversion disorder, psychogenic pain disorder." In a 1985 report Dr. Stevens said:

When I first saw this lady in June, 1983, . . . she had a work injury that initially produced physical symptoms in keeping with the injury and the findings. The type of injury she had typically improves over time, though for some small percentage of patients, the associated pain continues and in some cases, even increases. This occurs when an interacting mind-body situation is set up at the unconscious level. . . . When this occurs, it has traditionally been referred to as a psychophysiological musculoskeletal reaction and under the newer nomenclature is now referred to as psychological factors affecting physical condition. . . . As time went on the emotional component. . . became the more significant disabling factor. This was recognized by Dr. Chakales, Dr. Seibel, Dr. McMurtry, Dr. Kaczenski, and Dr. Bevilacqua, as well as myself. The series of medical and psychological reports in the file are a consistent chain of reports, describing in somewhat different terms the same disorder. There is more commonality in these reports than differences. However, the semantics of the reports are important to identify.

The threshold issue is whether the effects of this kind of mental disorder or psychoneurosis, if causally related to an on-the-job injury, are compensable. In *Wilson & Co. v. Christman,* 244 Ark. 132, 141, 424 S.W.2d 863, 869 (1968), the supreme court approved the following statement from Larson:

> . . .[W]hen there has been a physical accident or trauma, and claimant's disability is increased or prolonged by traumatic neurosis, conversion hysteria or hysterical paralysis, it is now uniformly held that the full disability including the effects of the neurosis is compensable. Dozens of cases, involving almost every conceivable kind of neurotic, psychotic, depressive, or hysterical symptom or personality disorder have accepted this rule.

Clearly the disabling effects of this type of disorder are compensable if the requirement of a causal connection is met. Although arguments can be made that this type of mental disorder ought not to be compensable, *see, e.g.,* the discussion in *Deziel* v. *Difco Laboratories, Inc.,* 403 Mich. 1, 268 N.W.2d 1 (1978), neither we nor the Commission are free to disregard the

supreme court's holding in *Christman.*

■ Our next inquiry is whether there is substantial evidence to support the Commission's finding that Boyd is not disabled. "Disability" means incapacity because of injury to earn, in the same or any other employment, the wages which the employee was receiving at the time of the injury. Ark. Stat. Ann. § 81-1302(e) (Repl. 1976). In 1983, Dr. Stevens expressed the opinion that she suffered a "current total disability." By 1985, it was Steven's opinion that Boyd was permanently and totally disabled. He said:

> [t]his type of emotional disorder is the single most refractive area to treatment. The individual resists any psychological interpretation and steadfastly maintains a physical cause. National statistics show that less than 5% of the individuals disabled for more than two years ever return to any form of productivity.

In 1981, Dr. Seibel noted that the prognosis was difficult and stated that it was unknown whether Boyd would ever be able to return to her previous job. Dr. Hutt, a clinical psychologist, said that her anxiety and depression would not independently preclude work but noted that her limitations regarding pain should be addressed by others. Dr. Bevilacqua said, "[S]he will not improve at all within the next twelve months, regardless of the type treatment she receives. In my opinion, her prognosis is very poor," and that her ability to work was "markedly impaired." It is undisputed that Boyd has not worked since the 1980 injury. She testified that she was not able to work because of the pain. The Commission's decision that Boyd is not disabled essentially rests on one sentence contained in Dr. Kaczenski's 1985 report: "I did not find evidence of a physical or mental disability." In the next sentence, however, Dr. Kaczenski states, "Mrs. Boyd does have a personality disorder, the features of which significantly impair her functioning in interpersonal, social, and occupational areas."

■ Whether Boyd is "medically" disabled or not, if she suffers from a disorder which "significantly impairs her functioning in occupational areas," she is disabled within the meaning of the law. This is the essence of legal disability. Medical opinions are admissible and frequently helpful in workers' compensation cases, but they are not conclusive. *Wilson & Co. v. Christman,*

*supra.* When Dr. Kaczenski's statement is read in the context of his entire report, it is clear that it does not constitute substantial evidence to support the Commission's conclusion that Boyd is not legally disabled.

 The Commission's finding of no disability also rests, in part, on evidence that Boyd has never undergone surgery, she has not been hospitalized, and that "all objective tests have been negative." If by "objective tests" the Commission means physical tests, the Commission is correct, but the observation is irrelevant as Boyd admits there is no longer a physical problem. However, the MMPI test which Boyd underwent is an "objective" test and the results were not "negative" in the sense of normal. It is also irrelevant that she has not had surgery or been hospitalized. No doctor has recommended either course of treatment for this neurotic condition.

The next issue which we must reach is whether the Commission's finding that there was no causal relationship between the disability and the on-the-job injury is supported by substantial evidence. We hold that it is not. In reviewing the evidence on this issue, the Commission emphasized Dr. Kaczenski's testimony. Dr. Kaczenski, as we have said, diagnosed Boyd as having a conversion disorder. He said:

> There is a temporal relationship between the injury on February 14, 1980, and the subsequent symptoms; however, there is no causal relationship. Mrs. Boyd's symptoms are related to a psychological conflict or need. Her personality structure, not her injury, determines the character of the symptoms. This symptom response is not obligatory. It is an unconscious choice to handle life's stresses in this manner, and is likely a pattern that is accidently [sic] set-up in childhood. Again, the injury is an environmental stimulus, but not the cause of the symptoms.

Dr. Stevens, in a subsequent report said:

> [Dr. Kaczenski] in a very specific way indicates that her symptoms are a reaction to the injury and indicates that it is inaccurate to say that the injury caused this response. I would agree with him in the strict interpretation of the

word cause. Rather, it is more appropriate to describe the injury as having precipitated, released, triggered or even aggravated a pre-existing, though asymptomatic, condition. In some ways it is similar to the individual with asymptomatic osteoarthritis, where the individual has no problems until a physical injury triggers the problems into a highly symptomatic condition. It is true that this lady had pre-existing personality characteristics that made her a higher risk for this happening. However, but for the job related injury, it is unlikely that these symptoms would have ever surfaced or become symptomatic. What I have just described is the essential characteristic of the psychophysiological disorder now called psychological factors affecting physical condition. There are always pre-existing personality characteristics that predispose the individual toward this condition, just as there are pre-existing personality characteristics for every emotional disorder that develops, anxiety, depression, or psychosis. Dr. Kaczenski chose to describe the situation as a psychogenic pain disorder and I would not disagree with this as an adequate descriptor. Notice both his diagnosis and my own involve pain that exceeds what might be expected on the basis of objective physical findings. It also involves a temporal relationship between an environmental stimulus and the initiation of pain (the job injury). For these reasons I perceive Dr. Kaczenski's reports to be in keeping with the other reports in the file and indicative of the work related injury being the precipitating factor in her present emotional impairment and ongoing chronic pain. . . .

[T]he absence of symptoms prior to the injury and the presence of symptoms immediately following the injury and continuing to the present time reflect the initiating or triggering responsibility of the workrelated injury.

The Commission took the position that Dr. Kaczenski's opinion conflicted with that of Dr. Stevens and chose to believe Dr. Kaczenski. We do not view the two reports as inconsistent. In *Murray* v. *Industrial Commission*, 87 Ariz. 190, 349 P.2d 627 (1960), the Arizona Supreme Court was faced with a similar problem. The court said:

> In the opinion of the doctors this injury did not "cause" the hysteria from a medical point of view. However, what constitutes proximate cause is a legal question primarily, dependent for its answer on the facts of the particular case. In the field of medicine, opinions of doctors qualified by training and experience as to causation are competent, and in many cases controlling and binding upon the trier of facts; however, when the medical facts on which such opinions are based are clearly shown, and the medical opinion as to causation conflicts with the inescapable legal conclusion, the former must give way to the latter. The difference in the medical and legal concept of cause results from the obvious differences in the basic problems and exigencies of the two professions in relation to causation. By reason of his training, the doctor is thinking in terms of a single, precise cause for a particular condition. The law, however, endeavors to reach an inference of reasonable medical certainty, from a given event or sequence of events, and recognizes more than one cause for a particular injurious result. In the law of torts, it is said that the tortfeasor is not entitled to a perfect specimen upon which to inflict injury. Likewise, in the field of Workmen's Compensation, the employer takes his employee as he is. In legal contemplation, if an injury, operating on an existing bodily condition or predisposition, produces a further injurious result, that result is caused by the injury.

87 Ariz. at 199, 349 P.2d at 633. *See also Thum* v. *MRO Services Co., Inc.*, 430 So. 2d 1298 (La. Ct. App. 1983). Again, we find no inconsistency between Dr. Kaczenski's report and Dr. Stevens's report. The "temporal" relationship between Boyd's back injury and her subsequent symptoms, described by Kaczenski, is fully consistent with the "triggering" mechanism described by Stevens. As Kaczenski said, the injury was an environmental stimulus of the symptoms. In cases of this type, where conversion disorder follows a physical, on-the-job injury, the causal requirement is met if it is shown that the symptoms of the neurosis were triggered or precipitated by the physical injury. We discussed this principle in a somewhat different context in *Conway Convalescent Center* v. *Murphree*, 266 Ark. 985, 987, 588 S.W.2d 462,

463 (1979), where we approved this statement from Larson:

> Pre-existing disease or infirmity of the employee does not disqualify a claim under the 'arising out of employment' requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought. This is sometimes expressed by saying that the employer takes the employee as he finds him.

We also said:

> The pre-existing condition may be any kind of weakness. . . When an industrial injury *precipitates* a disability from a latent prior condition, such as heart disease, cancer, back disease and the like, the entire disability is compensable. (Emphasis added and citations omitted.)

266 Ark. at 987-88, 588 S.W.2d at 463-64.

On the facts of the case at bar the Commission's determination that there was no causal relationship between Boyd's disability and the admittedly compensable physical injury is not supported by substantial evidence.

The Commission also based its decision on its stated concerns over Boyd's credibility. Boyd argues that because her testimony was given before the administrative law judge and that the administrative law judge made no such finding, the Commission was not entitled to do so from the cold record. We reject this argument. We have said many times that the credibility of witnesses is for the Commission to decide.

We have also said, however, that the Commission may not refuse compensation to a claimant simply because he is untruthful. *Guidry* v. *J&R Eads Const. Co.*, 11 Ark. App. 219, 669 S.W.2d 483 (1984). In the case at bar, Boyd's credibility is only relevant on the issue of whether she is malingering, and the Commission's decision carries with it an implicit finding that she is malingering. As the supreme court said in *Wilson & Co.* v. *Christman*:

> It goes without saying, and without the necessity for citation of cases, that true malingering is not a form of disability of any sort. It is a form of ability rather than

disability. It is a form of ability to feign injury or disability that does not exist. Had appellee in this case been malingering his disability, the Commission might well have determined that he had none.

244 Ark. at 141, 424 S.W.2d at 868-69.

Here, there is no substantial evidence to support a finding of malingering. Dr. Hutt, upon whose testimony the Commission particularly relied, said that Boyd's perceptions of pain are "very real to her," and that there was no evidence of malingering or intentional distortion of perceived severity of pain. Dr. Bevilacqua stated that Boyd appeared "very sincere and reliable" and that "she has absolutely no insight into her obvious emotional conflicts." Dr. Kaczenski said Boyd was not malingering. None of the many doctors who have seen Boyd have so much as suggested that she might be malingering. Although compensation claims predicated upon mental disorders must be carefully scrutinized in order to protect the employer against unwarranted claims, the danger of denying recovery to a deserving claimant must be guarded against with equal enthusiasm. *Royer* v. *Cantrelle*, 267 So. 2d 601 (La. Ct. App. 3rd (1972), *writ denied*, 263 La. 626, 268 So. 2d 680 (1972).

To summarize, the evidence in this case clearly establishes that:

1. Boyd suffered a compensable but relatively minor back injury in 1980, which has now completely healed.

2. At the time of the injury she was neurotic, but without symptoms.

3. She now suffers pain which causes her to be unable to work.

4. This pain is a symptom of her neurosis.

5. She is not malingering.

6. Her injury did not cause the neurosis - the neurosis was a pre-existing condition, and

7. Although the on-the-job injury did not "cause" her present pain in a medical sense, it was the precipitating event which brought forth this symptom, and was

therefore a legal cause of her resulting disability.

For the foregoing reasons, this case is reversed and remanded to the Commission for a determination of the extent of Boyd's disability.

Reversed and remanded.

CRACRAFT and COULSON, JJ., agree.