Bobby MORELOCK *v.* KEARNEY COMPANY

CA 94-373                                   894 S.W.2d 603

Court of Appeals of Arkansas
En Banc
Opinion delivered March 8, 1995

*Tolley & Brooks, P.A.*, by: *Jay N. Tolley*, for appellant.

*Shaw, Ledbetter, Hornberger, Cogbill & Arnold*, by: *E. Diane Graham*, for appellee.

JOHN MAUZY PITTMAN, Judge. Bobby Morelock appeals from an order of the Arkansas Workers' Compensation Commission finding that he failed to prove that he sustained compensable injuries to his feet on September 16, 1992, and to his back on December 11, 1992. Appellant challenges the sufficiency of the evidence to uphold the decision. We affirm.

On appeal in workers' compensation cases, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and will affirm if those findings are supported by substantial evidence. *Wright* v. *ABC Air, Inc.*, 44 Ark. App. 5, 864 S.W.2d 871 (1993). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* Where the Commission's denial of relief is based on the claimant's failure to prove entitlement to benefits by a preponderance of the evidence, the substantial evidence standard of review requires affirmance if the Commission's opinion displays a substantial basis for the denial of relief. *Id.* It is the function of the Commission to determine the credibility of witnesses and the weight to be given to their testimony. *Johnson* v. *Hux*, 28 Ark. App. 187, 772 S.W.2d 362 (1989). The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Id.*

Appellant worked as a lathe operator for appellee for 15 years. Appellant testified that he left work on September 12, 1992, complaining of a headache. On September 16, 1992, Dr. Johnny Atkins saw appellant and diagnosed tendonitis in his feet and advised him not to go to work for one week. Appellee's personnel manager testified that when appellant subsequently brought a doctor's excuse, appellant said that he was unsure of the cause of his tendonitis. Appellant did not work from September 12 to September 22, 1992. Appellant returned to work on September 22 and was reprimanded for excessive absenteeism, occurring both before and after September 16. Appellant first claimed on September 22 that his foot injury was work-related. Appellant

does not recall a specific incident but contends that he suffered a compensable injury to his feet on September 16, 1992, caused by repetitively "rocking" on his feet to operate the lathe.

Although appellant testified in his deposition that he first noticed pain in his feet on September 16, 1992, he recanted this testimony at trial and stated that his foot problems began in July prior to September 16, 1992. Dr. Joe Rouse's report of September 29, 1992, states that appellant said that he had been having problems with his feet for about two months. Appellant testified that about two or three months prior to September 1992 he told co-workers his feet hurt; appellant's supervisor said he first learned that appellant was asserting a work-related injury to his feet on September 22, 1992. Appellant stated that his foot problems started when he worked twelve-hour days for seven days a week during the 1992 summer months. However, appellee's records indicate that appellant worked an average of 40 hours a week or less and with the exception of one day, he never worked more than eight hours a day that summer.

Appellant's supervisor testified that a lathe operator may shift his weight from one foot to the other, but the job did not require "rocking" one's foot as appellant described. The supervisor stated that 30 to 40 percent of a lathe operator's time is spent setting up the machine which requires standing stationary without shifting or rocking the feet. He also said that appellant worked as a lathe operator from December 3 to December 11, 1992, without complaining about his feet. Dr. Joe Rouse opined that he could not say that appellant's condition was caused by work activities, but that his work did aggravate the condition. Appellant worked from September 22 to September 28 and then did not work until October 6, 1992. On October 6, he was assigned to light duty. Appellant said the job required him to reach forward while seated, which placed stress on his lower back. He frequently worked light duty until December 3, 1992, when he returned to work as a lathe operator. He worked until December 11, 1992, when he said that his back hurt. Appellant contends that he suffered a back injury on December 11, 1992, and has not worked since that time.

Appellant testified that he was physically active in non-work related activities, such as sports and hunting, prior to September

16, 1992. Appellant said that he was not physically active from December 1992 until April 1993, but the Commission found that he had engaged in activities such as basketball, volleyball, deer hunting, and four-wheeling prior and subsequent to September 16 and December 11, 1992, the dates of his alleged injuries. Moreover, appellant's medical records indicate that he suffers from degenerative disc disease, and the records document complaints of low back pain from 1981 to 1988.

The Commission found against appellant for several reasons: appellant failed to prove that he sustained a compensable injury to his feet or back; appellant's testimony lacked credibility and consistency; appellant was slow in reporting his injuries as work-related; appellant had excessive absences from work prior to and after the alleged injury in September; appellant engaged in physically demanding activities before and after both alleged injuries; Dr. Rouse testified that the foot injury was not job-related; three physicians who saw appellant related the foot injury to his job, but none of them "documented persuasive evidence of job-related injuries"; and appellant's back problems were longstanding. From our review of the record, we cannot conclude that fair-minded persons could not find as the Commission did here.

Affirmed.

ROBBINS and MAYFIELD, JJ., dissent.

MELVIN MAYFIELD, Judge, dissenting. I must respectfully dissent from the majority opinion in this case because I do not think the Commission's decision is supported by substantial evidence.

The Commission affirmed and adopted the opinion of the administrative law judge. The law judge's opinion states that the appellant "contends that he sustained an injury to his feet on September 16, 1992." And the crux of the opinion is found in the first sentence of the discussion entitled "COMPENSABILITY," which states, "This case turns on the credibility of the witnesses."

The appellant complains, on appeal to this court, that by simply adopting the law judge's opinion "the Commission determined the outcome of [appellant's] case by ignoring the objec-

tive medical evidence." I agree. Moreover, the majority opinion of this court appears to have followed suit.

As an example, the majority opinion states that appellant testified by deposition that he first noted pain in his feet on September 16, 1992, but "he recanted this testimony at trial and stated that his foot problems began in July prior to September 16, 1992." The record actually shows that at the hearing before the law judge the appellant testified, on direct examination, that he first noticed his feet were bothering him "approximately two to three months before I reported it." Then, on cross-examination, when the employer's attorney showed appellant a copy of his deposition and pointed out that the question asked at the deposition was "when you first noticed the problem" and not "when you reported the injury," the appellant admitted that he had "made a mistake."

It is clear to me that the appellee, the law judge, the Commission, and the majority of this court majored on a minor point. The appellant does not contend that he sustained some specific injury to his feet. He testified that a couple of months after he first noticed pain in his feet, he went to see a doctor for a headache and also told the doctor about his feet. A report from that doctor, Dr. Adkins, is in the record and confirms appellant's testimony. Jane Anderson, personnel manager for appellant's employer, testified that on September 16, 1992, the appellant came into her office with a note from the doctor which said that the appellant could not work until September the 21st because he had tendinitis in his hip, legs, and feet. Ms. Anderson then sent him to see the company doctor. In *Marcoe* v. *Bell International*, 48 Ark. App. 33, 888 S.W.2d 663 (1994), this court said:

> We have long adhered to the rule that an accidental injury may stem not only from a specific incident or a single impact, but also may result by a continuation of irritation upon some part of the body. — Neither do we require the injured workman to make inescapable proof that said accidental injury occurred on a date certain. A reasonably definite time is all that is required.

This leads us to the next problem I have with the majority opinion. The appellant was sent to the company doctor, Dr. Joe

Rouse. The law judge's opinion quotes from the doctor's report of September 22, 1992, as follows:

> [This 33-year-old white male presents with bilateral] ankle and forefoot pain. The pain was insidious in onset approximately 2 months ago and has been progressively more severe and intense since that time. There was no antecedent trauma or injury that he can recall. . . . I cannot say that his findings or symptoms are consistent with an on-the-job injury and therefore I do not feel are workers' compensable but cannot argue that his symptoms are somewhat exacerbated by his work activities (as they would be with any weight bearing on or off the job).

However, neither the law judge, the Commission, nor the majority opinion mentioned that the aggravation of a pre-existing condition may be compensable. *See Service Pharmacy* v. *Cox*, 252 Ark. 313, 478 S.W.2d 749 (1972); *Lockeby* v. *Massey Pulpwood, Inc.*, 35 Ark. App. 108, 812 S.W.2d 700 (1991).

The appellant was then referred back to his personal physician, Dr. Adkins, who referred him to Dr. Tom Phillip Coker. On December 4, 1992, Dr. Coker wrote to the employer as follows:

> Because the patient rocks first to one side of one foot and then the other side of the other foot and this is a repetitive activity performed hundreds of times a day at work, my opinion is that this is the etiology of his problem.

> He states this as being questioned because he is an active individual but general activity has nothing to do with whether or not a repetitive activity produces a problem. We see these cases literally by the dozens each year where a worker working in industry doing the same thing time after time produces a problem in the hands or feet whereas normal activity that the patient is engaged in for years does not produce this problem.

And on December 22, 1992, Dr. Coker wrote to Dr. Adkins as follows:

> This patient was seen on 12-22-92. He tried to return to work at his former job which requires side-to-side motion of his foot and symptoms have returned.

> . . . He is to be off work for two weeks and will have steel insoles placed in his shoes. It is a bad sign when returning to previous activity produces a flare of the symptoms and it may be that he is not going to be able to do this.

> He also is on limited status from Dr. Raben but he feels that a sitting job increases his back problems whereas a standing job increases his foot problems. For that reason, we will try him at no activity for two weeks.

And on February 16, 1993, Dr. Adkins wrote to the appellant's attorney as follows:

> The tenderness was fairly severe, it was usually worse when he climbs stairs. It was my feeling that he had an anterior compartment sprain to the tendons and muscles. He returned on the 29th [of September] and had apparently improved while off work, however, despite being 80% better at the time he returned to work, his leg pain quickly returned to its' usual degree. On that second visit, it was observed that his type of work required him to alternately shift from his left foot to his right foot, running a lathe, he moves back and forth constantly during his shift and this action is [sic] certainly can cause this type of pain and leg strain. His pain had actually now referred into his dorsal feet, in the anterolateral aspect of his ankles, but his hips were better. All of his pain increased with use.

> It was my impression that he had a significant tendinitis and anterior compartment strain. I recommended that he be off work for one week and then sitting or standing at a job for one week. He was to return to the Clinic one week following that. I also recommended that he seek orthopedic consultation, due to the fact that I felt this would be a chronic problem, *unless he took quite a bit of time off work.*

As can be seen from Dr. Coker's report of December 4, 1992, the doctor says that at work the appellant "rocks first to one side of one foot and then the other side of the other foot" and that this "repetitive activity" is the "etiology" of the problem appellant has with his feet. Although the law judge's opinion does not discuss this matter, the majority opinion repeats the ref-

erence in the appellee's brief to the testimony of appellant's supervisor that in appellant's job there is no "rocking back and forth." However, the record discloses that the supervisor testified as follows:

Q. Now, do you have to stand up while you perform that job?

A. Yes.

Q. Do you stand absolutely still while you perform that job?

A. Sometimes.

Q. Sometimes with nothing moving or just maybe a hand moving?

A. I'm not familiar with rocking of the feet at all. You shift your weight from one foot to the other, is what I was used to seeing. I'm not used to seeing anybody — I don't guess I've ever seen any rock on their feet while running a lathe.

Q. So the shifting, then, that we're talking about is what is necessary more than rocking?

A. Yes, ma'am.

Q. Okay. When they're shifting, what are they doing shifting?

A. While you're — you pull your material up to a stop on a lathe — I'm talking on a lathe. You rotate your turret handle forward, then you shift your weight from one foot to the other to close your collets with your left hand.

Q. So you're kind of reaching from one side to the other?

A. Yes, ma'am.

Thus, it is clear that the appellant shifted his weight from foot to foot. As the appellant's brief puts it, "the bottom line is whether the claimant is 'rocking or shifting,' he is continually moving

his weight from one foot to the other, which no matter how you phrase it, is repetitive motion."

The appellant contends that he eventually had to report the problem with his feet. He says the evidence shows that after he was released by Dr. Coker to try his job again, he was unable to do it for more than nine or ten days, and Coker then referred him to Dr. Susan Raben who changed his anti-inflammatory medicine and prescribed physical therapy for him. This was for appellant's "lumbar strain" which appellant said was caused by the "light work" he was given after he first saw the doctor about his feet. His back got to the point that Dr. Coker sent him to Dr. Raben on December 17, 1992. Dr. Raben thought, as Dr. Coker reported on December 22, 1992, that appellant's light-work job increased his back problems.

Although the appellant admitted that he had gone deer hunting for short periods while off work, I agree with the appellant that the Commission, by adopting the law judge's focus on insignificant inconsistencies, has allowed the decision in this case to turn on a credibility question without an in-depth analysis of the evidence. Although we do not reverse the Commission if its decision is supported by substantial evidence, where we are convinced that fair-minded persons with the same facts before them could not have reached the same decision, it is our duty to reverse. *Price* v. *Little Rock Packaging Company*, 42 Ark. App. 238, 856 S.W.2d 317 (1993). Even, if the appellant is untruthful, compensation cannot be denied for that reason alone. *Boyd* v. *General Industries*, 22 Ark. App. 103, 113, 733 S.W.2d 750 (1987); *Guidry* v. *J & R Eads Construction Co.*, 11 Ark. App. 219, 222, 669 S.W.2d 483, 485 (1983).

I would reverse and remand with directions for the Commission to determine benefits.

ROBBINS, J., joins in this dissent.