Sarah ELLISON *v.* THERMA-TRU

CA 98-1064 989 S.W.2d 987

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered May 12, 1999

*Walker, Shock, Harp & Hill, P.L.L.C.*, by: *Eddie H. Walker, Jr.*, for appellant.

*Ledbetter, Cogbill Arnold & Harrison, L.L.P.*, by: *E. Diane Graham*, for appellee.

*Judy W. Rudd*, for appellee.

WENDELL L. GRIFFEN, Judge. Sarah Ellison has appealed the decision by the Workers' Compensation Commission concerning her claim for permanent disability benefits associated with a compensable back injury governed by the Workers' Compensation Law that pre-dated Act 796 of 1993. Ellison contends that the Commission erred in its determination that she is entitled to permanent benefits on account of her anatomical impairment equal to a rating of 1% to the body as a whole, that she was entitled to wage-loss disability benefits of 3% to the body as a whole, and that the Second Injury Fund (SIF) was not liable pursuant to Ark. Code Ann. § 11-9-525 (Repl. 1996). We agree that the Commission erred; therefore, we reverse and remand so that the Commission can determine Ellison's entitlement to benefits according to the correct legal standards.

Ellison sustained a work-related back injury on May 8, 1991, while employed by Therma-Tru, arising from her work pulling a load of door styles. Therma-Tru accepted the injury as compensable and paid indemnity and medical benefits related to it. Ellison continued working for Therma-Tru until July 1, 1993, and has not returned to work elsewhere since that time. She filed a claim for additional compensation benefits in which she contended that she was permanently and totally disabled due to the combined effects of the May 8, 1991 injury and recurrences sustained in December 1992 and June 1993, as well as her pre-existing degenerative back condition and a pre-existing condition of chronic obstructive pulmonary disease. The SIF was joined as a party and denied any liability for benefits, while Therma-Tru denied Elli-

son's claim of being permanently and totally disabled. The Commission denied Ellison's claim for permanent and total disability benefits arising from her May 1991 compensable back injury and compensable recurrences in December 1992 and June 1993. Instead, the Commission found appellant entitled to 1% anatomical impairment, found that she was entitled to wage-loss disability benefits of 3% to the body as a whole, and held that the Second Injury Fund was not liable pursuant to A.C.A. § 11-9-525 and *Midstate Construction Co. v. Second Injury Fund*, 295 Ark. 1, 746 S.W.2d 539 (1988).

It is settled law that on appellate review of workers' compensation cases, we view the evidence and all reasonable inferences from it in the light most favorable to the Commission's findings. *Johnson v. Hux*, 28 Ark. App. 187, 772 S.W.2d 362 (1989). A decision of the Commission is reversed only if we are convinced fair-minded persons using the same facts could not reach the conclusion reached by the Commission. *Mikel v. Engineering Specialty Plastics*, 56 Ark. App. 126, 938 S.W.2d 876 (1997). In our review, we defer to the Commission in determining the weight of the evidence and the credibility of the witnesses. *Id.* The issue is not whether we may have reached a different conclusion or whether the evidence might have supported a contrary finding. *Harvest Foods v. Washam*, 52 Ark. App. 72, 914 S.W.2d 776 (1996).

Ellison argues that the Commission erroneously focused on deposition testimony by Dr. Stephen Heim, an orthopaedic surgeon, who acknowledged that Ellison had pre-existing back problems before the May 8, 1991 injury, concluded that she sustained some permanent impairment due to the job-related injury, and assessed her permanent anatomical impairment at 6% to the body as a whole due to her overall condition without dividing the impairment between the job-related and the pre-existing condition. When pressed during his deposition to apportion what part of the impairment rating was attributable to the traumatic work injury, Dr. Heim testified:

> With the trauma that has been relayed to me and knowing the condition of her back, if she has injured her back on the date that you mention, several times, in 1991 and 1992 and was taken off

work in 1993, I think that it is likely that if she is incurring ongoing trauma that it has contributed at least 1% to her back.

The Commission evaluated Dr. Heim's testimony and his written opinions regarding a 6% impairment rating in the following words:

Based on Dr. Heim's written opinion and deposition testimony, we find that the greater weight of the evidence establishes that only 1% of the claimant's anatomical impairment rating to the body as a whole is attributable to her work-related injuries and recurrences in 1991, 1992 and 1993. . . Dr. Heim is of the opinion that the claimant's work-related injuries in 1991 with recurrences in 1992 and 1993 have aggravated claimant's preexisting abnormality at L5-S1, to the extent that the claimant has experienced an additional 1% impairment (on top of the 5% impairment attributable to the preexisting disc abnormality) attributable to her work-related injury.

■ ■ Regarding the Commission's determination that Ellison is entitled to only 1% anatomical impairment based on Dr. Heim's statement that if she has "ongoing trauma that it has contributed to at least 1% to her back," this case is governed by workers' compensation law as of 1991, the date of the compensable injury for which appellant seeks permanent disability benefits. Thus, Ark. Code Ann. § 11-9-522 (1987) applies. That statute and case law pertinent to it such as *Bates v. Frost Loggins Co.*, 38 Ark. App. 36, 827 S.W.2d 664 (1992), and *Lockeby v. Massey Pulpwood, Inc.*, 35 Ark. App. 108, 812 S.W.2d 700 (1991), show that although a workers' compensation claimant must prove a causal connection between the work-related accident and the later disabling injury, it is not essential that the causal relationship between the accident and the disability be established by medical evidence, nor is it necessary that employment activities be the sole cause of a worker's injury in order to receive compensation benefits. By focusing on Dr. Heim's statement regarding the extent that "ongoing trauma" from the 1991 employment injury and its recurrences contributed to appellant's back condition, the Commission resorted to Act 796 of 1993 analysis based on Ark. Code Ann. § 11-9-102(F) (1987) which states, in pertinent part, as follows:

(ii)(a) Permanent benefits shall be awarded only upon a determination that the compensable injury was the major cause of the disability or impairment.

(b) If any compensable injury combines with a preexisting disease or condition or the natural process of aging to cause or prolong disability or a need for treatment, permanent benefits shall be payable for the resultant condition only if the compensable injury is the major cause of the permanent disability or need for treatment.

The Commission did not refer to § 11-9-102(F)(ii)(a) and (b) in its opinion; however, its decision regarding Ellison's permanent physical impairment demonstrates that Act 796 reasoning was employed in deciding her impairment. Under the law in 1991 when Ellison was injured, it was not necessary that employment activities be the "major cause" for permanent disability.

We must also reverse the Commission's determination that Ellison is only entitled to wage-loss disability benefits of 3% to the body as a whole. The Commission only factored the work-related injury into its analysis and made no reference to Ellison's pre-existing degenerative back condition and her chronic obstructive pulmonary disease. Both conditions were clearly established by the record. Concerning Ellison's pre-existing degenerative back condition, the Commission's opinion acknowledged Dr. Heim's opinion and deposition testimony that Ellison had some degree of permanent impairment. Ellison's testimony regarding her chronic obstructive pulmonary disease was uncontradicted and corroborated by medical records from her doctors.

 Under the law in effect when Ellison's claim arose, where the claim is for permanent disability based on incapacity to earn, the Commission is supposed to consider all competent evidence relating to the incapacity, including the age, education, medical evidence, work experience, and other matters reasonably expected to affect the claimant's earning power. *Rooney v. Charles*, 262 Ark. 695, 560 S.W.2d 797 (1978); *Perry v. Mar-Bax Shirt Co.*, 16 Ark. App. 133, 698 S.W.2d 302 (1985). Although the Commission cited the seminal case of *Glass v. Edens*, 233 Ark. 786, 346 S.W.2d 685 (1961), and its progeny, which recognize that these factors are properly considered in determining wage loss

disability, it did not consider the effect of Ellison's pre-existing degenerative condition and her respiratory problem in concluding that Ellison's wage-loss disability is 3% to the body as a whole.

 The Commission also erred when it failed to address the wage loss disability issue and Ellison's claim that she is permanently and totally disabled from the perspective of the "odd lot" doctrine. *Moser v. Arkansas Lime Co.*, 40 Ark. App. 108, 842 S.W.2d 456 (1992), *supp. op.*, 40 Ark. App. 113, 846 S.W.2d 188 (1993), and similar cases provide that an employee who is injured to the extent that she can perform services that are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist may be classified as totally disabled. This employee is said to fall within the odd-lot category of disabled workers. Act 796 of 1993 abolished the odd-lot doctrine for permanent disability claims based on injuries that occurred *after* July 1, 1993 (*see* A.C.A. § 11-9-522(e) (Repl. 1996)); however, the doctrine was alive and applicable to Ellison's disability claim stemming from her 1991 compensable injury and its recurrences.

 Finally, the Commission erred when it held that the Second Injury Fund is not liable pursuant to Ark. Code Ann. § 11-9-525 and *Midstate Const. Co. v. Second Injury Fund*, 295 Ark. 1, 746 S.W.2d 539 (1988), and concluded that Ellison failed to prove the third factor required by the *Midstate Construction* opinion (that her prior disability or impairment combined with the additional permanent disability or impairment caused by the 1991 compensable injury to result in the current disability status). Even if Ellison's anatomical impairment from the 1991 injury and its recurrences was only 1%, the combined effect of that impairment and her pre-existing degenerative disease and pre-existing respiratory condition resulted in her current disability status by all the medical evidence. While the Commission's opinion concludes at page 9 that "the greater weight of the evidence establishes the claimant's respiratory problems in no way 'combined' with the claimant's most recent back problems to cause her present wage loss disability," the employer's physician even opined after the December 1992 episode, "I really think that this lady is going to need to find another line of work." The October 11, 1993 medical report from Dr. Sills includes a statement that Ellison "is

unable to work due to her severe chronic obstructive pulmonary disease and back pain." Dr. Harford, the company physician, concluded in a July 21, 1993 report that appellant was "[n]ot able to do factory work. She needs to change occupations." Likewise, Dr. Heim, the orthopaedic surgeon deposed by the parties, testified that "Mrs. Ellison is probably not a good candidate for vigorous activity that requires a lot of bending, stooping and lifting. She should have a sedentary job." This and other proof in the record shows that fair-minded people could not agree with the Commission that the combined effect of Ellison's work related 1991 injury and her pre-existing respiratory condition and pre-existing degenerative back condition did not combine to produce her current disability.

Reversed and remanded.

HART, BIRD, ROGERS, and STROUD, JJ., agree.

MEAD, J., dissents.

M ARGARET MEADS, Judge, dissenting. I cannot agree with the majority to reverse this case. I believe the correct law was properly considered and applied to the facts of the case and the decision should be affirmed.

The record reflects that the Administrative Law Judge (ALJ) made the determination in her March 22, 1996, opinion, and reiterated in her April 18, 1996, amended opinion, that "[t]his injury occurred prior to July 1, 1993, therefore Act 796 does not apply." Therma Tru and Liberty Mutual Ins. Co. appealed these decisions and specified in their Notice of Appeal: "The ALJ's finding that the injury is not governed by Act 796 is contrary to the facts and the law and is error." The Commission issued an opinion on October 22, 1996, finding that claimant sustained a recurrence of her 1991 injury in December 1992 and again in June 1993. This opinion includes the following:

> In reaching our decision, we note that the respondents assert that any claim related to the claimant's 1993 back problems is governed by the provisions of Act 796 of 1993. However, we note that the amendments of Act 796 do not apply to a recurrence of an injury sustained before the effective date of the Act.

*Atkins Nursing Home v. Gray*, 54 Ark. App. 125, 923 S.W.2d 897 (1996).

Clearly, the issue of whether Act 796 of 1993 or the law preceding Act 796 applies to these facts has been litigated and properly decided, and I do not believe the Commission failed to consider and apply the appropriate law when it reached its June 11, 1998, decision now on appeal to this court. For the majority to conclude that the Commission gave lip-service only to pre-Act 796 law but actually applied Act 796 is an insult to the Commission and wholly speculative.

I dissent.